J-S08029-25
J-S08030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2732 EDA 2024 |

Appeal from the Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000268-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C.B.,JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2733 EDA 2024 |

Appeal from the Decree Entered October 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000392-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2734 EDA 2024 |

Appeal from the Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000269-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Z.C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S08029-25
J-S08030-25

APPEAL OF: S.B., FATHER

                           : No. 2735 EDA 2024

Appeal from the Decree Entered October 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000389-2023

| IN THE INTEREST OF: Z.-V.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: S.B., FATHER | : | |
| | : No. 2736 EDA 2024 | |

Appeal from the Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000270-2021

| IN THE INTEREST OF: Z.'V.W.B.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: S.B., FATHER | : | |
| | : No. 2737 EDA 2024 | |

Appeal from the Decree Entered October 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000390-2023

| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: S.B., FATHER | : | |

- 2 -

J-S08029-25
J-S08030-25

|  | : |  |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : | No. 2738 EDA 2024 |

Appeal from the Order Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000271-2021

| IN THE INTEREST OF: A.Z.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: S.B., FATHER | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 2739 EDA 2024 |

Appeal from the Decree Entered October 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000391-2023

| IN THE INTEREST OF: S.C.B.,JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: S.C.B.,JR., MINOR | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 2845 EDA 2024 |

Appeal from the Decree Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000392-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 12, 2025**

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 3 -

In these matters, S.B. (Father) appeals the decrees that terminated his parental rights to his two sons, sixteen-year-old S.C.B., Jr. and ten-year-old S.Z.C.B., and his two daughters, seven-year-old Z.'V.W.B.B. and five-year-old A.Z.B. (collectively, the Children), pursuant to the Adoption Act.[1] **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Father also appeals the orders that changed the Children's permanency goal to adoption, pursuant to the Juvenile Act. **See generally** 42 Pa.C.S.A. § 6351. Separately, the oldest child appeals the decree terminating Father's parental rights to him. Because these appeals raise substantially the same issues and involve the same facts and circumstances, we address them together. After review, we affirm.

In its opinion filed pursuant to Appellate Rule 1925(a), the orphans' court provided the following procedural and factual history:

> This family initially became known to [the Philadelphia Department of Human Services (the Agency)] via a [General Protective Services] report that [Mother] was having significant mental health challenges . . . . The report was investigated by [the Agency] and found to be valid. At that time, the whereabouts of [Father] were unknown; he would visit [Mother's] home occasionally but did not live there.
>
> At the adjudicatory hearing held on July 28, 2021, all four children were adjudicated dependent. After the adjudication, both [Mother] and [Father] were given Single Case Plan objectives [(SCP's)] to complete in order to achieve reunification with the [C]hildren. Father's SCP's

---

[1] The orphans' court also terminated the parental rights of R.R. (Mother) who was not present at the termination hearing and did not appeal. It appears from the record that the Children also have two older half-siblings. One of the siblings is no longer a minor. The record is unclear as to the other sibling's age. Neither sibling was involved in these appeals.

were as follows: (1) engage in mental health treatment; (2) complete a parenting class; (3) attend visits with the [C]hildren; (4) complete an employment counseling class; (5) acquire appropriate housing for himself and the [C]hildren; and (6) engage in drug and alcohol abuse counseling. Father was also ordered [] to attend the Clinical Evaluation Unit [(CEU)] for random drug screens. As of the most recent trial, September 30, 2024, [F]ather has not provided documentation that he has completed any of his SCP's and has not provided any documentation that he went to and passed a drug screen.[2] Furthermore, the Community Umbrella Agency [(CUA)] worker assigned to the family testified that she spoke with [F]ather approximately ten to fifteen times about the necessity of completing his assigned SCP's in order to be reunified with the [C]hildren.

The CUA worker also testified that [F]ather has been "[somewhere] between minimal and moderate" in completing his SCP's. For example, shortly after the adjudication, [F]ather would attend visits with [the boys, S.C.B., Jr. and S.Z.C.B.] at their kinship home but did not go see the girls, [Z.'V.W.B.B. and A.Z.B.] in their kinship home. When visits were switched from kinship home visits to supervised visits at the [A]gency, [F]ather stopped attending visits entirely. Additional testimony from the family's CUA worker was that the [C]hildren do not have a bond with [F]ather and do not look to [F]ather as a caregiver.[3] Finally, the CUA worker affirmed in her testimony at the September 30, 2024 termination of parental rights hearing that it would not cause . . . significant or irreparable harm to the [C]hildren if the parental rights of [M]other and [F]ather were terminated as to the [C]hildren and the [C]hildren's goals were to be changed to adoption.

_____

[2] We observe that the CUA worker testified that Father completed a parenting class in January 2023. *See* N.T., 9/30/24, at 29.

[3] The CUA worker testified that S.C.B., Jr. had "somewhat" of a bond with Father, but that the other children did not have a bond with Father. *See* N.T. at 31-32, 35, 38-39.

On September 30, 2024, [the orphans'] court held a termination of parental rights hearing in which [F]ather's parental rights to the four children were terminated under Pa. C.S.A. §2511(a)(1), (a)(2), (a)(5), (a)(8) and §2511(b).

Orphans' Court Opinion (O.C.O.), 11/7/2024, at 1-3 (record citations omitted).

Father and S.C.B., Jr. timely filed these appeals.[4] We will address S.C.B., Jr.'s appeal first. He presents the following three issues for our review:

1. Whether the Trial Court erred in terminating Father's parental rights under 23 Pa.C.S.A. section 2511(a)(1), the evidence having been insufficient to establish Father had evidenced a settled purpose of relinquishing his parental claim, or having refused or failed to perform parental duties.

2. Whether the evidence was sufficient to establish that Father had refused or failed to perform parental duties, caused [S.C.B., Jr.] to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of the above could not have been remedied under Sections 23 Pa.C.S.A. 2511(a)(2), 2511(a)(5), and 2511(a)(8).

3. Whether the evidence was sufficient to establish that termination of parental rights would best serve the needs and welfare of [S.C.B., Jr.], under 23 Pa.C.S. Section 2511(b).

S.C.B., Jr.'s Brief at 5 (footnote omitted) (cleaned up).

_____

[4] The Children's guardian *ad litem* (GAL) failed to file a brief in this matter or notify us that she was joining the orphans' court's opinion or a party's brief. She indicated to the orphans' court at the end of the hearing that she believed termination was in the Children's best interests. **See** N.T. at 70 (GAL stating, "I'm in agreement with the city, Your Honor, as I believe the evidence shows it's in the best interest for all the children to be adopted.").

Before addressing S.C.B., Jr.'s issues, we must first determine whether they are properly before us. At the end of the termination hearing, S.C.B., Jr.'s legal counsel advocated for the orphans' court to grant the termination petition, which he acknowledged in his Appellate Rule 1925(b) statement. *See* N.T., 9/30/24, at 68 (counsel stating, "I would then support the [A]gency's petition . . . with regards to termination."); Concise Statement Pursuant To Rule 1925(b), 10/27/2024, at 2 (unnumbered) ("Following testimony [c]ounsel had argued to the [c]ourt that the Petition pursuant to [S.C.B., Jr.] be granted, based on [c]ounsel's determination that [S.C.B., Jr.] had desired an outcome for a permanent and stable home.").

On appeal, S.C.B., Jr., through his counsel, now argues for the first time that the orphans' court should have denied the termination petition. In his Appellate Rule 1925(b) statement, counsel noted that "when [S.C.B., Jr.] learned of the [c]ourt's decision regarding the [t]ermination of his Father's parental rights, he appeared vis[i]bly upset. Clearly, [S.C.B., Jr.] did not wish for the relationship with his Father to be severed." Concise Statement Pursuant To Rule 1925(b), 10/27/2024, at 2 (unnumbered). However, it is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also In re B.C.*, 36 A.3d 601, 605 (Pa. Super. 2012). S.C.B., Jr.'s issues all challenge the sufficiency of the evidence to terminate Father's parental rights. Because S.C.B., Jr. did not raise these issues in the orphans' court, they are waived,

and we need not address them further. Nonetheless, because Father has also appealed the termination, we will address the sufficiency of the orphans' court's decision regarding S.C.B., Jr. and the other children below.

We now address Father's appeals of the termination decrees and goal change orders for each child. We consolidated these appeals *sua sponte* on November 4, 2024. Father presents the following four issues for our review, which we reorder for ease of disposition:

> 1. Did the trial judge rule in error that the City met its burden of proof that Father's parental rights to his children be terminated?
>
> 2. Did the trial judge rule in error that . . . terminating Father's rights would best serve the needs and welfare of the Children?
>
> 3. Did the judge rule in error that the Philadelphia Father's parental rights to [S.C.B., Jr.] be terminated when the child is 15 years old and there was evidence that [S.C.B., Jr.] did not wish to be adopted?
>
> 4. Did the trial judge rule in error that the goal be changed to adoption?

Father's Brief at 10 (cleaned up).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's

> decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Father's first issue does not specifically cite Section 2511(a). Instead, it broadly asserts that the orphans' court erred in determining that the Agency met its burden of proof to show that Father's parental rights should be terminated. *See* Father's Brief at 15. Nevertheless, based on the arguments in his brief, we understand that Father's first issue challenges the orphans' court's decision under Section 2511(a).

As noted, the orphans' court terminated Father's rights under Section 2511(a)(1), (2), (5), (8), and (b). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(1). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the

> petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Accordingly, termination under Section 2511(a)(1) is appropriate if Father has either evidenced a settled purpose of relinquishing his parental claim, or if Father has refused or failed to perform parental duties. In either event, Father's offending conduct must have been continuing for a period of at least six months immediately preceding the filing of the termination petitions. *See id.*

Here, the termination petitions were filed in September 2023; thus, the statutory timeframe to examine Father's actions began in March 2023. Our Supreme Court has "reinforce[d] the view that the six-month period immediately preceding the filing of the petition is the **most** critical period to evaluate for affirmative conduct or its absence . . . ." *In re Adoption of C.M.*, 255 A.3d 343, 367 (Pa. 2021) (citation omitted) (emphasis in original). "The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination." *In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009) (citing *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005)).

Regarding parental duties, we have explained that:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and

- 11 -

support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, . . . the parental obligation is a positive duty which requires affirmative performance.

***B.,N.M.***, 856 A.2d at 855 (citation omitted).

Furthermore,

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

***Id.*** (internal citations omitted).

Once a settled purpose of relinquishing parental rights or a failure to perform parental duties is established, "the court must engage in three lines of inquiry: (1) the parent's explanation for [the parent's] conduct; (2) the post-abandonment contact between [the] parent and [the] child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citing ***Charles E.D.M., II***, 708 A.2d at 92).

Here, the orphans' court determined that the Agency had proven the statutory grounds for terminating Father's rights to all four children under Section 2511(a)(1). The court explained:

[F]ather has evidenced a settled purpose of relinquishing parental duties by refusing or failing to perform parental

- 12 -

duties, including completing his assigned SCP's. Father was given six SCP's to complete: (1) a mental health screening and treatment; (2) parenting classes; (3) visits with the [C]hildren; (4) employment counseling; (5) housing assistance; and (6) drug and alcohol treatment. Testimony from the CUA worker assigned to the family is that [F]ather's compliance with his SCP's was "[somewhere] between minimal and moderate." Per testimony from the same CUA worker, [F]ather has never provided documentation that he engaged with drug and alcohol treatment. Father allegedly completed a mental health assessment per court order but denied completing the assessment and did not provide documentation that he took the assessment. Father also failed to maintain contact with the CUA workers and was inconsistent in visiting his children at [the Agency]. Finally, [F]ather was also ordered to the [CEU] for drug screens, for which he never produced documentation that he attended the screens. The family's CUA worker also testified that she spoke with [F]ather at over ten occasions and reiterated the necessity of completing the SCP's in order to reunify with the [C]hildren.

Considering the evidence and testimony presented regarding [F]ather's noncompliance, the three lines of inquiry must now be examined. First, what is [F]ather's explanation for his conduct or lack thereof. Father did not testify at the September 30, 2024 hearing and was not asked for an explanation for his conduct.[5] Second, the court considers if there has been "post-abandonment communication" between the parent and child(ren). As noted above, [F]ather has been inconsistent with visitation; he would frequently cancel at the last minute or would confirm a date and time but not show up. Father also stopped visiting the [C]hildren altogether when visits were switched to supervised visits at [the Agency]. Finally, the court must consider the effect of the termination of parental rights on the child. At trial on September 30, 2024, testimony from the family's CUA worker was that there would be no harmful effect if [F]ather's parental rights were

_____

[5] This is a misstatement. Father testified at the termination hearing. However, this does not alter our analysis because competent evidence supports the orphans' court's decision, as explained *infra*.

- 13 -

terminated. As such, it was proper for this court to involuntarily terminate [F]ather's parental rights.

O.C.O. at 5-6 (record citations omitted). The court also found that "[F]ather took no action on his own to reunify with the [C]hildren until the matter was brought to court; the [C]hildren were in [the Agency's] custody for nearly three years before [F]ather started attempting to complete his SCP's." *Id.* at 8 (record citation omitted).

On appeal, Father contests the termination under Section 2511(a)(1). He argues that he "was engaged in his goals and was not relinquishing a claim or failed to perform parental duties. The goals that [F]ather did not complete had no nexus on his parenting skills, duties, or safety of the [C]hildren." Father's Brief at 16. Father asserts that he completed parenting classes, visited the Children, engaged with mental health treatment, and signed releases and consents. *See id.* at 18. Further, "[e]ven though Father had some possible drug concerns it did not affect and have a nexus with his parenting duties." *Id.*

Father's argument is unavailing. It misapprehends the statutory requirements under Section 2511(a), and it fails to appreciate our standard of review in termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record would support an opposite result. *See id.* (citation omitted).

Our review of the record supports the orphans' court's decision. During the six-month statutory period at issue (March to September 2023), Father

refused or failed to perform parental duties. Although Father argues that he made some progress on his goals, most of that progress occurred after the termination petitions were filed. For example, related to mental health treatment, Father cites the CUA worker's testimony that Father was engaged in therapy in June 2024. *See* Father's Brief at 16. He uses this evidence to assert that he was "engaged in mental health within 6 months of the termination hearing." *Id.* at 17. However, Father testified at the termination hearing that he had not done any mental health treatment at that time. *See* N.T. at 58. Further, even if Father engaged in therapy in June 2024, he fails to appreciate that the relevant six-month period under Section 2511(a)(1) is the six months before the termination petitions were filed (March to September 2023), not the six months before the termination hearing. Thus, any actions that Father took in the summer of 2024 occurred well after the six-month period ended. *See* 23 Pa.C.S.A. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."). Father was also ordered to attend the CEU for a dual diagnosis related to mental health and drug and alcohol treatment. *See* N.T. at 23-24. Although he apparently completed the assessment, he refused to tell the caseworker. *See id.* at 24.

Additionally, regarding his drug and alcohol treatment goal, Father claims that he was in a suboxone treatment program until six months before

the termination hearing when he decided to quit using suboxone. *See* Father's Brief at 17. He asserts that he is not on drugs, and that any possible drug or alcohol abuse he suffers from does not impact his abilities as a parent. *See id.* However, the CUA worker testified that, to her knowledge, Father never completed drug and alcohol treatment. *See* N.T. at 23. He never provided her with information or documentation of his suboxone program. *See id.* at 43. Additionally, Father was ordered to attend the CEU for random drug screening; he never provided documentation that he attended the screenings. *See id.* at 21. Regardless of Father's assertion that any drug or alcohol abuse he suffers from does not impact his ability to parent, he was required to comply with his SCP's for reunification, and he failed to do so.

Father also asserts that he was visiting the Children. *See* Father's Brief at 18. To support this claim, he cites the CUA worker's testimony that he had been visiting for the last year. *See id.* However, the worker noted that Father's visitation had not always been consistent. *See id.*; N.T. at 28. Father claims that he was progressing well with his visits, and that they had recently been expanded to two hours. *See* Father's Brief at 18. However, again, Father fails to appreciate that the termination petitions were filed in September 2023, and the termination hearing was held in September 2024. Thus, any visits he completed in the year before the termination hearing would have occurred after the termination petitions were filed and the relevant six-month period under Section 2511(a)(1) ended. Further, the CUA worker testified that when the visits were kinship visits earlier in the case, Father

- 16 -

would periodically visit the boys but did not visit the girls. *See* N.T. at 27. When the visits became supervised at the Agency, Father did not attend the visits until approximately a year before the termination hearing (over two years after the Children were placed). *See id.* Additionally, even if the court could consider the visits Father attended in the year before the termination hearing, he was inconsistent with those visits. *See id.* at 28. He would miss visits, including no shows or last-minute cancellations. *See id.*

Father also claims that he has housing; he lives with his mother. *Id.* at 25, 58. However, the CUA worker indicated that this would not be an appropriate placement for S.C.B., Jr., who is autistic, because Father's mother referred to S.C.B., Jr. as dumb. *See id.* at 26.

Furthermore, Father asserts that he completed parenting classes and a parenting program, signed releases and consents, and is employed. *See* Father's Brief at 17-18. The CUA worker acknowledged that Father completed parenting in January 2023 (before the six-month period began) and participated in a program called "Project Dad." *See* N.T. at 29, 45-46. The CUA worker also confirmed that Father signed releases and consents. *See id.* at 29. Additionally, Father started providing paystubs to her when she "got the case again." *Id.* at 45. However, the worker explained that the case came back to her in 2024. *Id.* at 12. Thus, it appears that any paystubs Father provided would have been after the termination petitions were filed in September 2023. Additionally, the CUA worker rated Father's overall

compliance and progress throughout the life of the case as somewhere between minimal and moderate. *See* N.T. at 29-30.

Thus, there was competent evidence to support the orphans' court's decision to terminate Father's rights under Section 2511(a)(1). Father inconsistently visited the Children, and, at times, did not visit them at all. He never reported for his drug screenings, provided documentation of drug and alcohol treatment, or complied with mental health treatment. He was very argumentative and defensive with the CUA worker. *See* N.T. at 21-23. Additionally, the court could not consider any of Father's efforts made after the termination petitions were filed. *See* 23 Pa.C.S.A. § 2511(b). Thus, we discern no error of law or abuse of discretion in the orphans' court's decision to terminate Father's rights under Section 2511(a)(1).[6] Father's first issue merits no relief.

_____

[6] Although we can affirm the orphans' court's decision under any Section 2511(a) subsection, we caution the court that it appears terminating Father's parental rights under subsections (a)(5) and (8) was improper. Both subsections require that "[t]he child has been removed from the care of the parent . . . ." 23 Pa.C.S.A. § 2511(a)(5), (8). However, the CUA worker testified that the Children were removed from Mother's care, not Father's care, due to issues with Mother's mental health, substance abuse, and housing. *See* N.T. at 9-12. Around the time of removal, "[a]pparently, Father visited the home during that era but reportedly did not live there." *Id.* at 12. Because the Children were not in Father's care at the time of removal, they could not be removed from Father's care. Thus, Section 2511(a)(5) and (8) do not apply to Father in this case. *See, e.g., In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (holding that termination under Section 2511(a)(5) and (8) was not appropriate where the record reflected that the child was never in the father's care and, therefore, could not have been removed from his care as the father was incarcerated when the child was

*(Footnote Continued Next Page)*

Father's second issue challenges whether terminating his rights "best serve[d] the needs and welfare of the [C]hildren." Father's Brief at 28. Father's brief fails to cite Section 2511(b), but we surmise from his arguments that he is attempting to challenge the orphans' court's decision under that section. Section 2511(b) is the second part of the bifurcated analysis and provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of

_____

removed); *Interest of P.N.M.*, 264 A.3d 383, *3 (Pa. Super. 2021) (unpublished memorandum) (noting "Even if Mother did not waive her claims, we would conclude that termination under Section 2511(a)(5) and (8) was improper. Those subsections require, in part, that the child be removed from the care of the parent. The [c]hildren here were removed from the care of [f]ather, not [m]other.") (citation omitted).

Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" *K.T.*, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that the Agency had met its burden. The court cited the CUA worker's testimony that "there would be no harmful effect [on the Children] if [F]ather's parental rights were terminated." O.C.O. at 6. The court also noted the worker's testimony that the Children do not look to Father as a caregiver. *Id.* at 3. Additionally, "it would not cause the [C]hildren significant or irreparable harm . . . if the parental rights of . . . [F]ather were terminated as to the [C]hildren and the [C]hildren's goals were to be changed to adoption." *Id.*

- 20 -

On appeal, Father makes various arguments related to each child. Overall, he claims that the "Children reacted to [Father] with affection and vice versa" and that he "is affectionate with his children, shows them love." Father's Brief at 29, 31.

Specifically for S.C.B., Jr., Father argues that termination was not in his best interest because he was not in a pre-adoptive home, and his only parental bond was with Father. *See id.* at 29. Father asserts that S.C.B., Jr. is sixteen years old and does not want to be adopted. *See id.*

For S.Z.C.B., Father argues that permanent legal custodianship is in his best interest. *See id.* at 30. Father asserts that this would provide him with a loving family but still give him the opportunity to reunify with Father in the future. *See id.* According to Father, that is what the child "wished to have." *Id.*

For Z.'V.W.B.B. and A.Z.B., Father argues that it was not in their best interest to terminate his rights. He asserts that there were no safety concerns regarding returning them to his care. *See id.* He argues that his parental role with the girls was different than that with the boys because Father saw himself more "as a protector and redirecting the girls." *Id.* at 31.

Father's argument again fails to appreciate our standard of review. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M., supra*.

Here, the record supports the orphans' court's findings. As noted, the CUA worker testified that she did not think terminating Father's rights would cause irreparable harm to the Children. *See* N.T. at 33, 37, 41. Instead, she thought termination was in the Children's best interest. *See id.* The Children did not look to Father as a caregiver, to meet their daily medical and emotional needs, or for care or comfort. *See id.* at 32, 35-36, 39. The CUA worker testified that S.C.B., Jr. had "somewhat" of a bond with Father, but that the other children did not have a bond with Father. *See id.* at 31-32, 35, 38-39.

Although S.C.B., Jr. was not in a long-term permanency placement at the time of the hearing, he was going to transition into the home of his brother, S.Z.C.B. *See id.* at 31. S.Z.C.B.'s foster mother had expressed an interest in taking S.C.B., Jr. into her home permanently. *See id.* The social worker testified that S.C.B., Jr. was "a little unsure" about adoption but that his primary desire was to be in a stable family. *Id.* at 49-50. S.C.B., Jr. would also love to be in a home with his brother, S.Z.C.B.[7] *See id.* at 50.

_____

[7] S.C.B., Jr. now changes his mind on appeal, which we find waived, as explained above. Nevertheless, we reiterate that although a child's feelings towards a parent are relevant in a Section 2511(b) analysis, those feelings are not the only factor for the court to consider. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) ("If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent.")

S.Z.C.B. was in a pre-adoptive foster home and had a close relationship and parental bond with his foster mother. *See id.* at 35-36. The social worker confirmed that he is very bonded with and loves his foster mother, and that his visits with Father were not consistent. *See id.* at 50-51. According to the social worker, although S.Z.C.B.'s primary want would be his parents, if that cannot happen, he wants to remain with his foster mother. *See id.* at 51. She later elaborated that S.Z.C.B. feels conflicted about adoption because he feels like he is betraying Father if he says he wants to be with his foster mother. *See id.* at 54.

Z.'V.W.B.B. and A.Z.B. were together in a pre-adoptive foster home. *See id.* at 37. They had a parental bond with their foster mother who they identified as their mother, and they wanted to remain with her. *See id.* at 39-40, 52.

Thus, there was competent evidence to support the orphans' court's decision to terminate Father's parental rights under Section 2511(b). As an error correcting appellate court, we cannot search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See S.K.L.R., supra*. Father's second issue merits no relief.

Father's third issue relates specifically to S.C.B., Jr. Father argues that, because S.C.B., Jr. was fifteen years old at the time of the termination hearing and did not consent to being adopted, the orphans' court erred in terminating Father's parental rights. *See* Father's Brief at 12, 15. Father argues that the

"main purpose" of the termination and goal change statutes "is to create a new family unit. With [S.C.B., Jr.] not consenting to adoption a new family unit is not being created. The only thing occurring is creating a legal orphan and ward of the state with no long last[ing] permanency goal." *See id.* at 13-14. Father claims that for his rights to be terminated, it had to be clear that S.C.B., Jr. consented to adoption. *See id.* at 15.

We disagree. Section 2711 of the Adoption Act provides that consent to an adoption shall be required of the adoptee, if the adoptee is over 12 years of age. *See* 23 Pa.C.S.A. § 2711(a)(1). At the time of the termination hearing in September 2024, S.C.B., Jr. was fifteen years old. Thus, his consent is required before he can be adopted. *See id.*

However, the testimony at the termination hearing reflected that S.C.B., Jr. was "a little unsure" about adoption, not that he did not want to be adopted. *See* N.T. at 49. Although we agree that this does not evidence present consent, the social worker testified that S.C.B., Jr.'s primary desire was to have a stable, loving family. *See id.* at 49-50. S.C.B., Jr. "has mixed emotions, because he hasn't had [a stable, loving family] for so long. So for him, he doesn't really know his future. He's very unclear about his future." *Id.* at 49. Further, as noted, the CUA worker testified that S.C.B., Jr. was going to transition into his brother's foster home. *See id.* at 31. The social worker confirmed that S.C.B., Jr. "would love that. Because that would mean

consistent contact with family." *See id.* at 50. Thus, there is a possibility that S.C.B., Jr. could consent to adoption in the future.

Additionally, S.C.B., Jr.'s uncertainty about adoption does not preclude Father's parental rights from being terminated. *See In re T.D.*, 949 A.2d 910, 921-23 (Pa. Super. 2008), *appeal denied*, 970 A.2d 1148 (Pa. 2009) (affirming the termination of parental rights when the child was twelve years old and did not want to be adopted, but the parents' "demonstrated inability to provide the minimum level of parental care" meant that preserving their parental rights "would foreclose any hope for adoption and condemn [the child] to foster care until he reaches majority"). Section 2511 does not require pre-adoptive placement as a prerequisite to involuntary termination of parental rights. *See In re K.C.F.*, 928 A.2d 1046, 1053-54 (Pa. Super. 2007); 23 Pa.C.S.A. § 2511. *See also* Administrative Office of Pennsylvania Courts Office of Children and Families in the Courts, *Pennsylvania Dependency Benchbook* 14-4 (4th ed. 2024) ("identification of a pre-adoptive resource is not a prerequisite to the filing of a petition to terminate parental rights."). Regarding a petition for involuntary termination, Section 2512 states that "if the petitioner is an agency, the petitioner shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists." 23 Pa.C.S.A. § 2512(b)(3).

We acknowledge that terminating parental rights without a plan for adoption is generally not ideal. *See T.S.M.*, 71 A.3d at 269 ("Similarly, while

termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home."); *Pennsylvania Dependency Benchbook, supra*, at 17-2 ("While having an identified adoptive resource is not a prerequisite for TPR, ideally, there should be a strong likelihood of an eventual adoption.")

However, we reiterate that, under the facts of this case, the social worker testified that S.C.B., Jr. was "a little unsure" about adoption, and although he enjoyed visits with Father, his primary desire was a stable, loving family. **See** N.T. at 49-50. The CUA worker testified that S.C.B., Jr. had "somewhat" of a parental bond with Father, but did not look to Father as a caregiver, to meet his daily needs, or for care and comfort. **See id.** at 31-32. She did not think that termination would cause S.C.B., Jr. irreparable harm, and termination and changing his permanency goal to adoption were in his best interest. **See id.** at 32-33. S.C.B., Jr. was also going to transition into his brother's foster home. **See id.** at 31.

Additionally, Father's arguments related to creating a new family unit are misplaced. Father cites our Supreme Court's case, **In re Adoption of M.R.D.**, 145 A.3d 1117 (Pa. 2016), to support the proposition that parental rights cannot be terminated if a new family unit is not being created. **See** Father's Brief at 14. However, Father fails to appreciate that **M.R.D.** dealt

with a termination petition filed by one parent and a grandparent against the other parent, not a petition filed by an agency. *See M.R.D.*, 145 A.3d at 1119. Further, the Court in *M.R.D.* granted review to decide a question of law related to "whether a legal parent may establish cause under Section 2901 to excuse the relinquishment requirement and proceed with a proposed adoption by a grandparent." *See id.* at 1126 (citation omitted). Thus, the question at the heart of *M.R.D.* is quite different from the issues presented in this case.

Given the above evidence, and mindful of our highly deferential standard of review, we cannot say that the orphans' court abused its discretion by determining that termination would best serve the needs and welfare of S.C.B., Jr., even though he was unsure about adoption and was not currently in a pre-adoptive home. *See T.S.M.*, 71 A.3d at 268-69 ("[W]e emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved.") (citation omitted). Father's third issue merits no relief.

In sum, we discern no abuse of discretion or error of law in the orphans' court's decision to terminate Father's parental rights under Section 2511(a)(1) and (b) of the Adoption Act. Given our decision to affirm the orphans' court's termination decrees, Father's challenge to the goal change orders in his fourth

issue is moot. ***See In re Adoption of A.H.***, 247 A.3d 439, 446 (Pa. Super.

2021) (citation omitted).

Orders and decrees affirmed. Judge Dubow did not participate in the

consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/12/2025